BLEDSOE *v.* BOSTIC LUMBER & MFG. CO.

[73 South. 881, Division A.]

1. INFANTS. *Child labor law. Application.*

Section 9, chapter 165, Laws 1912, declaring that the provisions of this act shall apply only to manufacturing establishments engaged in manufacturing or working in cotton, wool or other fabrics and the canneries and manufacturing establishments where children are employed indoors at work injurious to health, or in operating dangerous machinery, but shall not apply to fruit canneries, applies to employment of children in operating dangerous machinery in other manufacturing than those first enumerated, but does not prohibit their employment therein in other service.

2. SAME.

Under this act an infant employed as a sweeper in a factory, is not employed in operating dangerous machinery, within the meaning of the act, because he sweeps around machinery, it not being necessary to a proper operation thereof that he sweep while the machinery is in ·operation.

APPEAL from the circuit court of Lauderdale county. HON. W. W. VENABLE, Judge.

. Suit by M. L. Bledsoe, a minor, against the Bostic Lumber & Manufacturing Company. From a judgment for dedendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Jacobson & Brooks,* for appellant.

In compliance with the request of the court for additional briefs on the question: ''Was the appellant, be-

cause of his employment to sweep and clean around the machinery operated by appellee, engaged in operating dangerous machinery, within the meaning of section 9, of chapter 165, of the Laws of 1912? ''We desire to most respectfully call the court's attention to our rejoinder brief, as the same is devoted in a great part to construction of said section 9, as applicable to the case at bar.

We submit that section 9, of the act, makes the provisions thereof applicable to all factories engaged in operating dangerous machinery (except fruit canneries) and that the benefits of the said act enure and apply to all children, employed in such factories, contrary to law. That it makes no difference whether the child is engaged in operating the machinery or not; but the mere fact that the child is employed in said factory, renders the factory liable for the injury sustained by the child.

Sections 1 and 3, of the act, do not restrict the employment of children of those engaged in operating dangerous machinery, but plainly says: ''That it shall be unlawful for any person, firm or corporation, to employ or detain or permit to work in any factory, mill, etc.,'' and section 9 plainly defines the establishments in which they shall not be employed, detained or permitted to work.

The appellee is just such a manufacturing establishment as is embraced in section 9, because it is engaged in operating dangerous machinery. In further construing section 9, of the act, under consideration, we contend that it means the following:

The provisions of this Act shall only apply to A.— Manufacturing establishment engaged in manufacturing or working in, A. 1. Cotton; A. 2. Wool or other fabrics; A. 3. Canneries and manufacturing establishments where children are employed indoors at work injurious to health. B.—Manufacturing establishments engaged in operating dangerous machinery. C.—But the provisions of this act shall not apply to fruit canneries

Thus, we include in class A, manufacturing establishments engaged in working certain materials, and those employing children indoors at work injurious to health. In class B, we include manufacturing establishments engaged in operating dangerous machinery. In class C, certain factories are excepted from the provisions of the act, to wit, fruit canneries.

Now, when we read sections 1, and 3, in connection with section 9, the act makes it absolutely unlawful to employ a girl under the age of fourteen, or a boy under the age of twelve, in any manufacturing establishment engaged in operating dangerous machinery, and a child under sixteen years of age, can only be employed in such establishments, under the conditions specified in said section 3. We are then forced to the conclusion that to have employed appellant contrary to said section 3, to sweep and clean around machinery in a manufacturing establishment engaged in operating dangerous machinery, was certainly an illegal employment of appellant. We, therefore, submit that under the law it makes no difference whether the child was actually engaged in operating dangerous machinery or not, the sole question being, was the child illegally employed or permitted to work in a factory engaged in operating dangerous machinery? If the employer placed at work in such a factory, or permitted him to work in such a factory, and the child sustained injuries while so employed, or permitted to work, it makes no difference what the child was doing at the time he sustained the injury. The sole question being, was he employed unlawfully, and if he was, then we contend the said unlawful employment was, therefore the proximate cause of the injury.

To this effect, we respectfully refer to the following cases, cited fully in our original and rejoinder briefs. *Starnes* v. *Albion Manufacturing Co.; Ornamental Iron & Wire Co.* v. *Green; Stratford* v. *Republic Iron Co.; Jacobson* v. *Merrill;* Labatt's Master & Servant (2 Ed.) ; *Elk Cotton Mills* v. *Grant,*

The evil which the legislature desired to correct was the employment of children in places where it was dangerous for them to work. It is not necessary to actually put the child at work in operating dangerous machines.

The child must be kept from places dangerous on account of their surroundings. From common knowledge we know it is dangerous for a child to be placed in close proximity of dangerous machines, for under such conditions on account of its youth and inexperience the child is apt to play with the machinery. So we contend, that to place the appellant in a room to clean and sweep around dangerous machinery, is of the same effect under the law, and tantamount to placing him at work in operating dangerous machinery.

Again, section 9 deals, solely, and only with the character of the establishments which are embraced in the act, and it does not attempt to define the duties in which the person is employed must be engaged in to be unlawful. The duties are defined by sections 1 and 3, which are to be employed in, detained, or permitted to work in any such establishment.

Reading sections 1, 3 and 9, together, it makes it unlawful to employ, detain, or permit such perons to work in establishments engaged in operating dangerous machinery.

We, therefore, would most respectfully submit that when the appellant was unlawfully, employed to sweep and clean around the dangerous machinery, operated by appellee (a manufacturing establishment engaged in operating dangerous machinery), that, under the law, it makes no difference whether appellant was employed to operate the dangerous machinery or employed to sweep around same, so far as section 9 is concerned.

Within the meaning of section 9 of chapter 165, of the Laws of 1912, the appellant was engaged in operating dangerous machinery, because the law makes no distinction in the injury sustained as to whether the child was engaged in operating a dangerous machine, or hurt in the

factory, for, carried to its logical conclusions, the illegal employment is the proximate cause of the injury on the theory that had the child not been illegally employed, he would never have been in the room where the dangerous machinery was operated.

We may, therefore, in consideration of the case at bar, answer the inquiry made by the court in the affirmative.

We can, with certainty, say that the effect of section 9 of chapter 165, Laws of 1912, is to write into the cause of the injury the words that the appellant was engaged in operating dangerous machinery, for when the appellant was employed and placed in the room at work around the dangerous machinery in appellee plant, contrary to law, he was engaged in operating the dangerous machinery within the meaning of section 9, for the dangerous machinery operated by appellee made the employment of appellant unlawful, and caused the injury sustained by her.

*Baskin & Wilbourn,* for appellee.

The appellee, in obedience to the request of the court, herewith submits the following as its answer to the question propounded by the court, which question is as follows: "Was appellant, because of his employment to sweep and clean around the machinery operated by appellee, engaged in operating dangerous machinery in the meaning of section 9, of chapter 165 of the Laws of 1912."

Section 9 of the Acts of 1912 is as follows: "The provision of this act shall apply only to manufacturing establishments engaged in manufacturing or working in cotton, wool or other fabrics and to canneries and manufacturing establishments where children are employed indoors at work injurious to health, or in operating dangerous machinery, but the provisions of this act shall not apply to fruit canneries."

It is not claimed in this case that the appellant was empoyed indoors at work injurious to heath, nor, as we submit, is it claimed in the declaration that the appellant was

employed in operating dangerous machinery, therefore, it seems to us that the question should be answered in the negative.

This section 9, as we understand from the question propounded by the court, is a limitation and construction of chapter 165 of the Acts of 1912, and we understand from the question that the court is looking no further in reference to said act except to properly construe section 9; therefore the appellant not having been employed to work indoors injurious to health, must have been employed in operating dangerous machinery, which is not the fact in this case.

If appellant were grounding his action upon section 9 of chapter 165 of the Acts of 1912, his declaration should have alleged that he was employed indoors injurious to health, or that the appellant was employed in operating dangerous machinery. The declaration, without either of these allegations cannot be construed as invoking the rights that the legislature intended to or did confer upon minors by virtue of said section.

Further, the Act of 1912, as shown by section 9, did not prohibit the employment of minors in or around manufacturing plants, and because there is no such legislation in Mississippi, the appellant in this case, has no right of action as against the appellee.

Many states have statutes that prohibit the employment of minors, and, in some instances women, to laor in or about any corporation, but such is not the legislative will of Mississippi.

The court, by reference to section 1035 of the Code of 1907 of Alabama, will find that that state has a statute as follows: "No woman, or boy under the age of fourteen years, shall be employed to work or labor in or about any mine in this state."

In construing this provision of the Alabama Code, the authorities cited by the appellant in his brief, are grounded upon statutes similar to the Alabama statutes, above quoted.

So it seems to us that the question: "Was appellant employed in operating dangerous machinery?" is the only question presented, and in the interpretation of this language, this court is well advised of the rule that common or popular words are to be construed in their popular sense common-law words, according to their common-law meaning; and technical words, according to their technical sense."

As a general rule, words are to be taken in their ordinary or popular sense, unless it plainly appears that they are used in a different sense. So that the phrase "operating dangerous machinery," according to the common acceptation of the word means that the child must have been employed as an operative of said dangerous machinery. *Alabama Great Southern R. R. Co.* v. *Gilbert,* 60 So. 544.

Webster's Unabridged Dictionary defines "operative" as: A laboring man; a laborer, artisan or workman in manufactories. Also as having the power of acting; hence exerting force, physical or moral; active in the production of effects.'

The word "operate," is defined as to put into or to continue in operation or activity; to work; as, to operate a machine, *Rhodes* v. *Matthews,* 67 Ind. 137; *Smith* v. *Burlington C. R. & N. R. Co.,* 59 Iowa 73; *Malone* v. *Burlington C. R. & N. R. Co.,* 54 Am. Rep. 11; *Matson* v. *Chicago, R. I. & P. R. Co.,* 68 Iowa, 22; *Strobel* v. *Chicago, M. & St. P. R. Co.,* 70 Iowa 555.

In view of the plain provisions of this statute, as we see it, and contrasting this section of the statute with the statutes of other states, whose decisions are relied upon by counsel for appellant, we submit that said decisions are wholly inapplicable in the proper construction of the statute of Mississippi.

Up to this time, the legislature of Mississippi has not enacted laws as broad and comprehensive as other states with reference to the protection of minors.

We further submit that the testimony as shown in this record does not show that the appellant was required even to sweep during the times at which the machinery of appellee was being operated.

SYKES, J., delivered the opinion of the court.

M. L. Bledsoe, a minor, filed suit in the circuit court of Lauderdale county against the Bostic Lumber & Manufacturing Company for personal injuries alleged to have been sustained by him while in the employ of the defendant company. In his declaration, among other things, the plaintiff alleged that when a minor between fifteen and sixteen years old he was employed by the defendant as a sweeper at the sash, door, and blind factory of the defendant in Meridian; that the defendant was engaged in the business of manufacturing window sashes, doors, etc., and also was running a planing mill, which was all run by dangerous machinery; that the plaintiff was employed without the consent of his mother or father and in violation of chapter 165 of the Laws of 1912. Plaintiff alleges that his duties were as such sweeper ''to assist in sweeping and cleaning the plant and to carry all refuse and shavings out of the way.'' Plaintiff alleges that he was hurt while attempting to work on a joiner under the orders of the foreman of the mill. In other words, the gravamen of plaintiff's declaration is that he was employed as a sweeper by the defendant which was a manufacturing establishment engaged in operating dangerous machinery in violation of the above law of 1912, commonly known as the Child Labor Law. It is the contention of the appellee that it is not such a manufacturing establishment as is contemplated by this law. The facts relating to the injury to the boy were conflicting. His testimony was to the effect that he was ordered to operate a joiner, and that in trying to do so he received the injury to his fingers. It was the testimony of the defendant that the boy was not ordered to operate this machine, but that he was try-

ing to make a sling shot handle on it at the time of his injury, and that his attempted use of this machine was in direct violation of his instructions. The jury returned a verdict in favor of the defendant, which means that they accepted its version of the testimony as being true. The plaintiff, in answer to a question of his counsel to explain to the jury exactly what his duties were with reference to sweeping the mill, answered as follows:

"My duty was to sweep the floor, sweep the blocks out from under the machines, and sweep all the trash up out of the way so they could work."

The first and most important question to be decided by us is whether or not chapter 165, p. 173, Laws 1912, applies to this defendant manufacturing establishment. It is the contention of the appellant that it does. Section 9 of this act defines and prescribes to what manufacturing establishments it applies. The caption and this section read as follows:

"Provisions of this act apply only to factories working cotton, wool or other fabrics and canneries.

"Sec. 9. The provisions of this act shall apply only to manufacturing establishments engaged in manufacturing or working in cotton, wool or other fabrics and to canneries and manufacturing establishments where children are employed indoors at work injurious to health, or in operating dangerous machinery, but the provisions of this act shall not apply to fruit canneries.'

It is the contention of the appellee that this section, taken in connection with its caption, shows that it only applies to manufacturing establishments engaged in working in cotton, wool, or other fabrics, and to canneries; that the defendant does not work in cotton fabrics or cotton or wool and is not a cannery. It is the contention of the appellant that the true meaning of this act is as follows:

"(1) The provisions of this act shall apply only to—(what): (2) Manufacturing establishments engaged in manufacturing or working (3) in cotton, (4) in wool, (5) in other fabrics, (6) to canneries, (7) manufacturing es-

tablishments where children are employed indoors at work injurious to health, (8) manufacturing establishments engaged in operating dangerous machinery; (9) but the provisions of this act shall not apply to fruit canneries.''

We disagree with both counsel as to their construction of this section. It was the intent and purpose of this act to protect the life and health of the minors of the state. The legislature, however, did not see fit to absolutely prohibit all minors from working in all manufacturing establishments of every character, but saw fit to prohibit or limit their working only in certain kinds of manufacturing establishments as set forth in section 9. By the first part of this section this act applies to manufacturing establishments engaged in manufacturing or working in cotton, wool, or other fabrics, and to canneries and manufacturing establishments where children are employed indoors at work injurious to health. In this part of section 9 the legislature meant to limit or prevent minors from working in these establishments because that character of work was thought to be injurious to their health. The legislature further wanted to protect, as far as possible, the lives and limbs of minors employed in all manufacturing establishments, not above included, by prescribing the character of their work, hence the phrase ''or in operating dangerous machinery.'' The meaning of this phrase is to be gathered by construing it with the preceding part of section 9. When taken in connection with the part immediately preceding it, it reads as follows:

''Manufacturing establishments where children are employed indoors at work injurious to health, or in operating dangerous machinery.''

The meaning is clear that it refers to manufacturing establishments where children are employed indoors at work injurious to health, and also to manufacturing establishments where children are employed in operating dangerous machinery. Or, expressed in a terser and perhaps clearer manner, the latter part of this section applies to ''manufacturing establishments where children are em-

ployed," first, "indoors at work injurious to health; or," second, "in operating dangerous machinery." Both of the above phrases modify the verb "are employed," by explaining the nature of this employment. The first part relates to the health of children, viz., where they are employed indoors at work injurious to health. The second part relates to the protection of their lives and limbs, viz. where they are employed in operating dangerous machinery. The contention of counsel for appellant that this clause means manufacturing establishments engaged in operating dangerous machinery cannot be sound. It is a well-known fact that in these days all of the mills, factories, canneries, and manufacturing establishments in Mississippi are engaged in operating machinery dangerous to children. So if the construction contended for by appellant were true, then this act would apply to all manufacturing establishments in Mississippi, except the one establishment, viz., fruit canneries, especially excepted from its operation. There would have been, therefore, no necessity whatever for section 9 to attempt to limit and prescribe to what manufacturing establishments this act applies, because it would apply to all within Mississippi. Section 9 would then have read in substance as follows: This act shall not apply to fruit canneries. On the other hand, when we consider that the operating of dangerous machinery is hazardous, and especially so to children, and that the operation of all machinery of all manufacturing establishments is dangerous so far as children are concerned, then it is obvious that section 9 meant that it applied to manufacturing establishments where children are employed in operating dangerous machinery.

The contentions of counsel for appellant and appellee in this case in their briefs and oral argument before this this court were directed solely to the question of whether or not the employment of the plaintiff was in violation of the Child Labor Law. The court, of its own motion at a later period, called for additional briefs from counsel on both sides on the question.

"Was the appellant, because of his employment to sweep and clean around the machinery, engaged in operating dangerous machinery, within the meaning of section 9 of chapter 165 of the Laws of 1912?"

These additional briefs of counsel have been of great assistance to the court. It is not averred in the declaration that plaintiff was employed in operating dangerous machinery. His averments and his testimony show that he was employed as a sweeper in the factory. He swept around the machinery. It is not averred, and neither does the testimony show, that it was necessary to a proper operation of the machinery that this sweeping be done while the machinery was in operation. It is not proven that his sweeping in any way had any influence upon the operation of the machinery. His duties had nothing to do with the starting of the machinery, with the speed of same, or its proper operation, or the stopping of it. In Missouri there is a statute providing that every railroad corporation shall be liable for all damages sustained by any person while engaged in the work of operating such railroad by reason of the negligence of any other agent or servant. It is there held that this statute is not limited in its application to the servants of the railroad company actually engaged in the operation of trains, but includes all servants whose work is directly necessary for the running of trains. *Nines* v. *St. Louis, etc., Co.*, 107 Mo. 475, 18 S. W. 26. If we apply this same liberal construction here we must answer that the appellant in this case was not so employed, for the reason that the testimony does not show that his work was directly necessary for the operation of the machinery.

*Affirmed.*